**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case** |
| Plaintiff, | **COMPLAINT FOR** |
| v. | **CIVIL PENALTIES AND** |
| | **PERMANENT INJUNCTION** |
| BLACK & DECKER (U.S.) INC., | |
| A Maryland Corporation | |
| Defendant. | |

Plaintiff, United States of America, by its undersigned attorneys, alleges:

1.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 2071(a) and 28 U.S.C. §§ 1331, 1345, and 1355(a).

2.     This Court has venue in this matter pursuant to 28 U.S.C. §§ 1391(b), (c), and 1395(a).

NATURE OF THE CLAIM

3.     Plaintiff, United States of America, seeks civil penalties and injunctive relief against the defendant, Black & Decker (U.S.) Inc. ("Black & Decker" or "Defendant") for failing to immediately report to the U.S. Consumer Product Safety Commission ("Commission" or "CPSC") as required by law upon receiving information reasonably supporting the conclusion that certain cordless electric lawnmowers manufactured and sold under the Black & Decker and Craftsman brand names failed to comply with an applicable consumer product safety rule, contained a defect or defects that could create a substantial product hazard and/or created an unreasonable risk of serious injury or death.  The United States alleges Defendant knowingly failed to immediately report to the CPSC that the cordless electric

1

lawnmowers could and/or did exhibit spontaneous restarting.  This occurs when the consumer releases the lawnmower's handle, removes the safety key, and the lawnmower momentarily shuts off, and then unexpectedly restarts (Double-Component Failure).  Additionally, the United States alleges Defendant knowingly failed to immediately report to the CPSC that the cordless electric lawnmowers could and/or did continue running when the consumer releases the lawnmower's handle and removes the lawnmower's key (Continuous Run Defect).  Finally, the United States alleges Defendant knowingly failed to immediately report to the CPSC that the cordless electric lawnmowers violate the mandatory requirements contained in CPSC's Safety Standard for Walk-Behind Power Lawn Mowers, 16 C.F.R. § 1205.5, because the lawnmowers were able to operate absent direct operator actions.  Beginning on or around November 27, 1998, consumers and others notified Defendant of this danger and resulting injuries.  Notwithstanding its actual and presumed knowledge of the nature and number of incidents, the seriousness of the injuries, the violation of the mandatory standard, and the design defect of the product, Defendant provided no notice and no information about these issues with the cordless electric lawnmowers to the CPSC until an initial report filed with the CPSC on or about December 23, 2008 indicating that Defendant was investigating the possibility of the mower starting unintentionally.  A subsequent report was submitted to the CPSC on or about February 6, 2009.

<u>DEFENDANT</u>

4.     Black & Decker is a corporation, organized and existing under the laws of the State of Maryland, with its principal corporate offices located at 701 East Joppa Road in Towson, MD.  At all times material to this Complaint, Black & Decker was a wholly-owned subsidiary of The Black & Decker Corporation, a Maryland corporation.  Currently, Black & Decker is a wholly-owned subsidiary of Stanley Black & Decker, Inc., a corporation organized and existing under the laws of the State of

Connecticut, with its principal corporate offices at 1000 Stanley Drive, New Britain, CT.

5.      At all times material to this Complaint, Black & Decker was a "manufacturer" of the cordless electric lawnmowers as defined in 15 U.S.C. § 2052(a)(11)

CONSUMER PRODUCT SAFETY ACT

6.      The CPSC is an independent federal regulatory agency that enforces the Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051 et seq.  One of the purposes of the CPSA is to protect the public against unreasonable risks of injury associated with consumer products.  The principal offices of the Commission are at 4330 East-West Highway, Bethesda, Maryland, 20814. 16 C.F.R. § 1000.4.

7.      Under the CPSA, every manufacturer of a consumer product distributed in commerce is required to "immediately inform the Commission" of certain information.  15 U.S.C. § 2064(b)(1), (b)(3) and (b)(4).

8.      Under the CPSA, "[e]very manufacturer of a consumer product…distributed in commerce…who obtains information which reasonably supports the conclusion that such product…fails to comply with an applicable consumer product safety rule …shall immediately inform the Commission of such failure to comply…unless the manufacturer…has actual knowledge that the Commission has been adequately informed of such . . . failure to comply." 15 U.S.C. § 2064(b)(1).

9.      Under the CPSA, "[e]very manufacturer of a consumer product…distributed in commerce . . . who obtains information which reasonably supports the conclusion that such product . . . contains a defect which could create a substantial product hazard . . . shall immediately inform the Commission" of the defect unless the manufacturer "has actual knowledge that the Commission has been adequately informed of such defect."  15 U.S.C. § 2064(b)(3).

10.     The CPSA defines "substantial product hazard" as a product that "creates a substantial

3

risk of injury to the public."  15 U.S.C. § 2064(a)(2).

11.     The CPSA also requires that "[e]very manufacturer of a consumer product…distributed in commerce . . . who obtains information which reasonably supports the conclusion that such product . . . creates an unreasonable risk of serious injury or death, shall immediately inform the Commission" of the risk unless the manufacturer "has actual knowledge that the Commission has been adequately informed of such . . . risk."  15 U.S.C. § 2064(b)(4).

12.     The Commission has defined "serious injury or death" to include any significant injury, including injuries necessitating medical or surgical treatment and lacerations requiring sutures.  16 C.F.R. § 1115.6(c).

13.     Under the Commission's regulations, "immediately" means "within 24 hours" after a company has obtained the requisite information regarding (i) a product that fails to comply with an applicable consumer product safety rule, (ii) a product potentially creating an unreasonable risk of serious injury or death or (iii) a defect that could create a substantial product hazard.  16 C.F.R. § 1115.14(e).  The regulations permit initial reports to be made by telephone to the CPSC's headquarters in Bethesda, Maryland. 16 C.F.R. § 1115.13(b), (c).  Reports may also be made in writing and sent to the agency's Office of Compliance and Enforcement.  *Id*.

14.     The failure to furnish information required by 15 U.S.C. § 2064(b) is a prohibited act under the CPSA.  15 U.S.C. § 2068(a)(4).

15.     Any person who knowingly violates 15 U.S.C. § 2068 is subject to civil penalties.  15 U.S.C. § 2069(a)(1).  The CPSA defines "knowingly" as "(1) the having of actual knowledge, or (2) the presumed having of knowledge deemed to be possessed by a reasonable man who acts in the circumstances, including knowledge obtainable upon the exercise of due care to ascertain the truth of the

representations."  15 U.S.C. § 2069(d).

FACTS

16.     Beginning in or around September 1995 through September 2006, Black & Decker manufactured approximately 177,871 cordless electric lawnmowers under the Black & Decker and Craftsman brand names.  The Black & Decker brand cordless electric lawnmowers contained model numbers CMM1000 or CMM1000R; the Craftsman brand lawnmowers had model number 900.370520.

17.     The cordless electric lawnmowers were manufactured for sale to consumers for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise.  Each of the cordless electric lawnmowers is therefore a "consumer product" as that term is defined in 15 U.S.C. § 2052(a)(5).

18.     To activate the electric cordless lawnmower, a user pulled the handle and turned the on/off lever, located near the handle, to the "on" position.

19.     To deactivate the electric cordless lawnmower, a user released the handle, which automatically turned the on/off lever to the "off" position.  Releasing the handle caused the lawnmower to stop running.

20.     Each electric cordless lawnmower also featured a safety key which provided an additional level of protection to consumers.  According to each lawnmower's instruction manual, the lawnmower "will be completely disabled when the safety key has been removed from the mower."

21.     The lawnmowers were subject to CPSC's Safety Standard for Walk-Behind Power Lawn Mowers, 16 C.F.R. §1205.5, which required that all walk-behind lawnmowers have systems to prevent the blade from operating unless the consumer actuates the controls.  The lawnmowers violated the mandatory standard because the lawnmowers were able to operate absent any actions by consumers.

5

22.     Between November 1998 and February 2009, Black & Decker received at least 112 complaints regarding the Continuous Run defect and/or Double-Component Failure of its cordless electric lawnmowers.  At least twenty-nine of these complaints specifically reported that the lawnmower continued to run or exhibited spontaneous restarting after the lawnmower's handle was released and the safety key was removed.

23.     Beginning in or around 2002, consumers contacted Black & Decker to complain that their cordless electric lawnmowers were continuing to run despite removal of the safety key.  Black & Decker investigated more than seventeen consumer complaints and, when possible, obtained lawnmowers for inspection.

24.     In or around February 2004, Black & Decker consulted an outside expert regarding its cordless electric lawnmowers who identified the Continuous Run defect, and knew that the lawnmowers could continue to run, even if a consumer released the handle and removed the safety key.

25.     Black & Decker was aware of at least two consumer complaints in which the Double Component Failure of the cordless electric lawnmower resulted in injury.  On or around August 5, 2003, a consumer was cleaning the blades of a lawnmower with the safety key removed.  The lawnmower started unexpectedly and the consumer suffered injuries to his right hand.  On or around June 22, 2006, Black & Decker was notified that a consumer was cleaning his lawnmower with the safety key removed. The lawnmower started unexpectedly and the consumer suffered injuries to his right hand.   The lawnmower continued to run while the consumer was in an emergency room, between two and five hours, and continued to run even after fire department personnel removed the blade.

26.     On or about December 23, 2008, Black & Decker filed an initial report and on or about February 6, 2009 Black & Decker filed a full report pursuant to 15 U.S.C. § 2064(b), that described the

Double-Component Failure in which the lawnmower spontaneously restarted after the user released the lawnmower's handle and removed the safety key.

27.     On or about March 11, 2010, CPSC staff advised Black & Decker that the staff had made a preliminary determination that the lawnmowers presented a substantial product hazard.

28.     On or about April 7, 2010, Black & Decker agreed to conduct a corrective action plan and to provide consumers with a repair, or, alternatively, a credit that could be applied to a new lawnmower.

29.     On or about September 29, 2010, the CPSC announced a recall of the lawnmowers.

COUNT I

30.     Paragraphs 1-29 are incorporated by reference and realleged herein.

31.     Separately as to each individual lawnmower distributed in commerce, Defendant knowingly failed to immediately inform the CPSC upon obtaining information that reasonably supported the conclusion the lawnmowers contained a defect or defects (including, but not limited to, defect or defects in design, manufacturing, instructions, warnings, and/or hardware) which could create a substantial product hazard (i.e., a defect or defects that could create a substantial risk of injury to the public) in violation of 15 U.S.C. §§ 2064(a)(2), 2064(b)(3) and 2068(a)(4).  These violations continued from the time Defendant obtained the information regarding the defect(s) until it finally furnished the required information to the CPSC regarding the defect or defects that could create a substantial product hazard.

COUNT II

32.     Paragraphs 1-29 are incorporated by reference and realleged as if set forth fully herein.

33.     Separately as to each individual lawnmower distributed in commerce, Defendant

knowingly failed to immediately inform the CPSC upon obtaining information that reasonably supported the conclusion the lawnmowers created an unreasonable risk of serious injury or death, in violation of 15 U.S.C. §§ 2064(b)(4) and 2068(a)(4).  These violations continued from the time Defendant obtained the information regarding the failure to comply until it finally furnished the required information to the CPSC regarding the unreasonable risk of serious injury or death.

## COUNT III

34.     Paragraphs 1-29 are incorporated by reference and realleged as if set forth fully herein.

35.     Separately as to each individual lawnmower distributed in commerce, Defendant knowingly failed to immediately inform the CPSC upon obtaining information that reasonably supported the conclusion the lawnmowers failed to comply with an applicable consumer product safety rule, in violation of 15 U.S.C. §§ 2064(b)(1) and 2068(a)(4).  These violations continued from the time Defendant obtained the information regarding the failure to comply until it finally furnished the required information to the CPSC regarding the failure to comply.

## COUNT IV

36.     Paragraphs 1-29 are incorporated by reference and realleged as if set forth fully herein.

37.     There is a reasonable likelihood that Defendant will continue to violate the CPSA reporting requirement, warranting injunctive relief pursuant to 15 U.S.C. §§ 2064(b), 2068(a)(4), and 2071(a).

## JURY DEMAND

38.     The United States demands a trial by jury on all Counts so triable.

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that this Court:

8

I.     Assess civil penalties of up to $1,825,000 against Defendant in accordance with 15 U.S.C. § 2069, for each separate violation and the related series of violations alleged in Counts I, II, and III of this Complaint.

II.    Award plaintiff injunctive relief against Defendant as set forth in Count IV that would: (1) require Black & Decker to comply with the reporting requirements of the CPSA and its accompanying regulations; and (2) assure such compliance by requiring Defendant to establish internal recordkeeping and compliance monitoring systems designed to provide timely reports to the CPSC whenever Defendant obtains information which reasonably supports the conclusion that any of its products fail to comply with an applicable consumer product safety rule or contain a defect which could create a substantial product hazard or creates an unreasonable risk of serious injury or death; and

III.   Award plaintiff, the United States of America, judgment for its costs and for such other and further relief that this Court deems just and proper.

DATED:          April 29, 2015

OF COUNSEL:                                   Respectfully Submitted,

STEPHANIE TSACOUMIS                           BENJAMIN C. MIZER
General Counsel                               Principal Deputy Assistant Attorney General
U.S. Consumer Product Safety Commission       Civil Division

MELISSA V. HAMPSHIRE                           ROD J. ROSENSTEIN
Assistant General Counsel                      United States Attorney
U.S. Consumer Product Safety Commission        District of Maryland

PATRICIA VIEIRA                                REBECCA KOCH
Attorney                                       Assistant United States Attorney
Office of the General Counsel
U.S. Consumer Product Safety Commission        JONATHAN F. OLIN
Bethesda, MD 20814                             Deputy Assistant Attorney General
                                               Consumer Protection Branch

                                               MICHAEL S. BLUME
                                               Director
                                               Consumer Protection Branch


                                               /s/ Jill Furman
                                               JILL FURMAN
                                               Deputy Director
                                               Consumer Protection Branch
                                               Department of Justice, Civil Division
                                               450 Fifth St., NW 6400-S
                                               Washington, DC 20001
                                               (202) 307-0090
                                               Jill.furman@usdoj.gov